**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**JASSIEL ALBERTO SARMIENTO RUIZ,**

**Petitioner,**

**v.** **Civil Action No. 3:26cv85**

**FARMVILLE DETENTION CENTER,**

**Respondent.**

# MEMORANDUM OPINION

Jassiel Alberto Sarmiento Ruiz, a federal immigration detainee who was previously held in the Farmville Detention Center ("Farmville"),[1] proceeding *pro se*, submitted a 28 U.S.C. § 2241 Petition (the "§ 2241 Petition"). (ECF No. 1.)[2] Petitioner challenges his detention by Immigration and Customs Enforcement ("ICE"). Respondent filed an Opposition. (ECF No. 5.) In response, Petitioner submitted a letter to the Court with various detention records attached. (ECF Nos. 6, 6-1.) For the reasons set forth below, the § 2241 Petition will be GRANTED.

## I. Factual and Procedural Background

### A. Factual Background

Petitioner, who is proceeding *pro se*, provides very little information regarding his circumstances. The Court necessarily relies on submissions by Respondent. As articulated in a sworn declaration by Assistant Field Office Director Charles Byrne, the following summarizes Petitioner's immigration status:

---

[1] Petitioner filed a Notice of Address Change and is now being held in the North Lake Processing Center in Baldwin, Michigan. (ECF No. 7, at 1.)

[2] The Court employs the pagination assigned by the CM/ECF docketing system.

5. Petitioner is currently a 29-year-old native and citizen of Mexico.

6. On January 14, 2014, Petitioner was admitted to the United States as a lawful[] permanent resident.

7. On February 1, 2018, Petitioner was convicted in the Court of Common Pleas of the State of Delaware in and for Sussex County for the offense of Possession of Marijuana, in violation of Delaware State Code Title 16 Section 4764(a).

8. On February 7, 2025, Petitioner was encountered by Customs and Border Protection ("CBP") when Petitioner applied for admission to the United States at Houston Bush International Airport as a lawful permanent resident returning from Monterey, Mexico. Petitioner's inspection was deferred and he was ordered to appear to CBP Deferred Inspection in Baltimore, Maryland on March 6, 2025, with his judgments and convictions records.

9. On March 6, 2025, Petitioner appeared at CBP Deferred Inspection at Baltimore-Washington International Airport, and it was determined that Petitioner was inadmissible and amenable for remova[l] proceedings pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II) due to his controlled substance violation. Petitioner was taken into immigration custody pending his removal proceedings.

10. On March 8, 2025, Petitioner was issued a Notice to Appear ("NTA") charging him with being inadmissible to the United States (and thus removable from the United States) under 8 U.S.C. § 1182(a)(2)(A)(i)(II) as an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21).

11. On March 11, 2025, Petitioner, through counsel, filed a motion for custody redetermination – *i.e.*, a request for release on bond – with the Immigration Court. The Immigration Court set a hearing on March 18, 2025, for this motion to be adjudicated.

12. On March 18, 2025, an Immigration Judge denied Petitioner's bond redetermination request based on lack of jurisdiction to consider bond for 2 reasons: (1) Petitioner is charged as an arriving alien, and (2) Petitioner is charged under 8 U.S.C. § 1182(a)(2)(A)(i)(II), a mandatory ground of detention. Petitioner's reserved his right to appeal, and his appeal was due on April 17, 2025, to the Board of Immigration Appeals ("BIA"). No appeal of the Immigration Judge's decision denying bond was filed with the BIA.

13. On June 24, 2025, an Immigration Judge sustained the removable charge against Petitioner.

14. On July 29, 2025, Petitioner filed a Form EOIR-42A, Application for Cancellation of Removal for Certain Permanent Residents, and a Form I-601, Application for Waiver of Grounds of Inadmissibility as reliefs from removal.

15. On August 22, 2025, an Immigration Judge denied Petitioner's applications for relief from removal, Form EOIR-42A and Form I-601. Petitioner was ordered removed from the United States to Mexico.

> 16. On September 19, 2025, Petitioner filed an appeal of the Immigration Judge's decision denying his applications for relief before the BIA. Petitioner's appeal is currently pending before the BIA.

ECF No. 5-1 ¶¶ 5–16.

**B. <u>Procedural Background</u>**

On February 4, 2026, Petitioner filed the instant Petition. (ECF No. 1.) Petitioner asks the Court to "provide an individualized bond hearing before an immigration judge within a reasonable time set by the Court" or, in the alternative, to order Petitioner's release. (ECF No. 1, at 8.) On February 26, 2026, the Court issued a Memorandum Order directing Respondent to file a responsive pleading within sixty (60) days. (ECF No. 4, at 1.) On April 27, 2026, Respondent filed an Opposition. (ECF No. 5.) On June 22, 2026, Petitioner responded in a letter and attached various records from his detention. (ECF No. 6; ECF No. 6-1.) The records describe Petitioner's behavior, work in the Voluntary Work Program as a kitchen worker, participation in chapel services, and his physical and mental condition. (*See* ECF No. 6-1.)

In Petitioner's appeal of the Immigration Judge's denial of his applications for cancellation of removal and waiver of grounds of inadmissibility, briefs from both parties were received by the BIA on June 25, 2026. *See* EOIR, *Automated Case Information*, A-Number: 061-465-939, available at: https://acis.eoir.justice.gov/en/caseInformation (last visited Sep. 30, 2026); ECF No. 5-1 ¶¶ 14–16.

## <u>II. Standard of Review</u>

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United

States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. Analysis

The central question before the Court is whether Petitioner's detention comports with due process. Petitioner asserts that he has now been detained by ICE since March 6, 2025 (ECF No. 1, at 5), for almost nineteen months, "without a constitutionally adequate bond hearing." (ECF No. 1, at 2.) According to Petitioner, a bond hearing was conducted approximately one month into his detention and "is now stale." (ECF No. 1, at 7.) Petitioner seeks "an individualized bond hearing" or, in the alternative, an order to release Petitioner. (ECF No. 1, at 8.)

In opposition, Respondent asserts that Petitioner is inadmissible and subject to removal proceedings pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II) due to his controlled substance violation. (ECF No. 5, at 1.) Respondent recounts the Immigration Judge's denial of Petitioner's bond redetermination request based on lack of jurisdiction because "(1) Petitioner is charged as an arriving alien subject to mandatory detention under 8 U.S.C. § 1225 and (2) Petitioner is charged under 8 U.S.C. § 1182(a)(2)(A)(i)(II), a mandatory ground of detention under 8 U.S.C. § 1226(C)." (ECF No. 5, at 1–2 (citing [ECF No. 5-1]).)

### A. Mandatory Detention

Petitioner is a lawful permanent resident. (ECF No. 5-1 ¶ 6.) He was encountered by CBP as he was returning to the United States through Houston Bush International Airport. (ECF No. 5-1 ¶ 8.) "'An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws

*unless* the alien' falls into one of six categories." *Othi v. Holder*, 734 F.3d 259, 266 (4th Cir. 2013) (quoting 8 U.S.C. § 1101(a)(13)(C)). One of the categories, relevant here, includes those who have "committed an offense identified in section 1182(a)(2) of this title." 8 U.S.C. § 1101(a)(13)(C)(v). Section 1182(a)(2) in turn references those who have committed "a crime involving moral turpitude" or "a violation of . . . any law or regulation . . . relating to a controlled substance," such as marihuana. *Id.* § 1182(a)(2)(A)(i); *see also* 21 U.S.C. § 802(6) (defining "controlled substance"); 21 U.S.C. § 812(c), sched. I, (c)(10) (listing "Marihuana"). Thus, "[a] lawful permanent resident who has 'committed an offense identified in section 1182(a)(2)' may 'be regarded as seeking an admission.'" *Blanche v. Lau*, 609 U.S. 1, 8 (2026) (citing 8 U.S.C. § 1101(a)(13)(C)(v)).

Respondent asserts that Petitioner is mandatorily detained under 8 U.S.C. § 1225. ECF No. 5, at 2–6. For aliens seeking admission, section 1225 provides, in relevant part: "[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a [removal] proceeding . . . ." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In seeking admission, "an alien convicted of, or who admits having committed . . . a violation of . . . any law relating to a controlled substance . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i). The Supreme Court's recent decision in *Blanche v. Lau*, 609 U.S. 1 (2026) further clarifies:

> Removing a lawful permanent resident on a charge of inadmissibility thus involves two steps: "While only commission of the crime is required at step one" (to show that the alien could be regarded as seeking to be admitted), "conviction (or admission) is required at step two" (to show that the alien seeking to be admitted is inadmissible).

*Id.* at 8 (quoting *Barton v. Barr*, 590 U.S. 222, 233 (2020) (brackets omitted)). In this case, in 2018, "Petitioner was convicted of . . . Possession of marihuana, in violation of Delaware State

Code Title 16 Section 4764(a)." (ECF No. 5, at 2 (citing [ECF No. 5-1] ¶ 7).) Petitioner is regarded as seeking admission due to his commission of a crime relating to a controlled substance and inadmissible due to his conviction of a crime relating to a controlled substance. Therefore, Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). However, section 1225(b)(2) is silent regarding the provision of bond hearings and any limit on the length of detention. *Jenning v. Rodriguez*, 583 U.S. 281, 297 (2018).

Respondent also asserts that Petitioner is mandatorily detained under 8 U.S.C. § 1226(c). ECF No. 5, at 6–7. Section 1226(c) provides, in relevant part: "The Attorney General *shall* take into custody any alien who [] is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title . . . ." 8 U.S.C. § 1226(c)(1)(A) (emphasis added). Therefore, Petitioner is also subject to mandatory detention under 8 U.S.C. § 1226(c). Section 1226(c) is also silent regarding any limit on the length of detention and specifies that "the Attorney General 'may release' one of those aliens [detained under § 1226(c)] '*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." *Jennings*, 583 U.S. at 303 (emphasis in original).

Petitioner references a bond hearing that was conducted approximately one month into his detention (ECF No. 1, at 7), but the record reflects that although a hearing may have been held, the Immigration Judge did not reach consideration of bond factors. On the two-page form Order issued on March 18, 2025, the Immigration Judge checked the box for "Denied, because" and entered the following text: "Immigration lacks jurisdiction to consider bond for 2 reasons: (1) [Petitioner] is charged as an arriving alien. *See* 8 CFR 1003.19(h)(i)(B)(i);[3] (2) [Petitioner]

---

[3] 8 C.F.R. § 1003.19(h)(1)(i) provides, in relevant part: "[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens:

is charged under [Immigration and Nationality Act] 212(a)(2)(A)(i)(II) [8 U.S.C. § 1182(a)(2)(A)(i)(II)], a mandatory ground of detention." (ECF No. 5-2, at 1.)

According to Respondent, the Immigration Judge did not consider bond because Petitioner was mandatorily detained under Sections 1225 and 1226(c) and is not entitled to a bond hearing. (ECF No. 5, at 1–2.)

### B. <u>Due Process</u>

Even proper grounds for mandatory detention pursuant to statute do not permit a person to be detained indefinitely without a bond hearing. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). The Fifth Amendment declares that no person—including aliens—shall "be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V; *Zadvydas*, 533 U.S. at 693 ("the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent" (citations omitted)). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citation omitted).

Respondent argues that "[t]he Constitution does not mandate any further process to arriving aliens like Petitioner than provided by the [Immigration and Nationality Act ("INA")]." (ECF No. 5, at 8 (emphasis omitted).) Citing *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), Respondent asserts that "[f]or any alien who has 'not been admitted into the country pursuant to law,' the INA provides the appropriate due process." (ECF

---

(B) Arriving aliens in removal proceedings . . . ."

8 C.F.R. § 100.19(h)(1)(i), (i)(B).

No. 5, at 8 (citing *Thuraissigiam*, 591 U.S. at 138 (citation omitted)).) Respondent's argument ignores important nuances.

The Supreme Court has explained: "This Court has long held that an alien seeking *initial* admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (emphasis added) (citations omitted). For "an alien on the threshold of *initial* entry . . . '[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (emphasis added) (citations omitted). "[H]owever, once an alien gains admission to our country and begins to develop ties that go with permanent residence his constitutional status changes accordingly." *Plasencia*, 459 U.S. at 32. Thus, "aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Mezei*, 345 U.S. at 212. Because Petitioner was initially admitted to the United States on January 14, 2014 as a lawful permanent resident (ECF No. 5-1 ¶ 6), and "beg[an] to develop ties that go with permanent residence," *Plasencia*, 459 U.S. at 32, the cases cited by Respondent involving people seeking initial admission to the United States, such as *Thuraissigiam*, are inapposite. (*See* ECF No. 5, at 8–9.)

Turning to the caselaw applicable to lawful permanent residents, if a lawful permanent resident is absent from the United States for an extended period, he or she may lose the due process rights that come with presence and ties in the United States, but a short absence does not sever due process rights. Relevant here, a court in this district considered two Supreme Court

cases on this issue, *Mezei* and *Plasencia*. *See Hong v. United States*, 244 F. Supp. 2d 627, 633–34 (E.D. Va. 2003). The Court explained:

> In *Mezei*, the Supreme Court held that a long-time lawful permanent resident alien who left the country without authorization or reentry papers and remained behind the Iron Curtain for 19 months could constitutionally be excluded from the country and detained at Ellis Island indefinitely without a hearing. In so holding, the Supreme Court recognized that Mezei, as a resident alien seeking admission to the country, was not entitled to the same constitutional protections in removal proceedings as a resident alien continuously present in the United States.

*Id.* (discussing *Mezei*, 345 U.S. 206). The Court in *Hong* then distinguished *Mezei* from *Plasencia*, in which the Supreme Court held that a lawful permanent resident alien who had traveled to Mexico for only a few days and later attempted to smuggle aliens back into the United States was entitled to due process, namely a hearing on the exclusion charges, given the shortness of her visit." *Id.* (discussing *Plasencia*, 459 U.S. 21). Upon application of these two cases, the Court determined that because Hong had left the United States for "slightly more than six months," *id.* at 629, "the only due process owed to Hong, as an inadmissible resident alien who left the country for an extended period of time, is adequate notice and an opportunity to be heard on the underlying removal charges," *id.* at 636.

Here, Respondent has not asserted that Petitioner was absent from the United States for an extended period of time. As a long-time lawful permanent resident of more than eleven years, Petitioner "gain[ed] admission to our country and [] develop[ed] ties that go with permanent residence [and] his constitutional status change[d] accordingly." *See Plasencia*, 459 U.S. at 32. Nothing in the record indicates that Petitioner's constitutional status was affected by his trip to Mexico. Therefore, Petitioner is not limited to the process afforded by the INA.

Respondent next argues that "the Due Process Clause does not place an outer temporal limit on an alien's mandatory detention (pursuant to 8 U.S.C. §§ 1225(b) or 1226(c)) without a

bond hearing." (ECF No. 5, at 7.) Respondent also avers that *Demore v. Kim*, 538 U.S. 510 (2003), controls on the question of the constitutionality of mandatory detention of a legal permanent resident. (ECF No. 5, at 9–11.) Respondent contends that in *Demore*, the Supreme Court reasoned that because mandatory detention pursuant to § 1226(c) has a "definite termination point," detainees can be held without bond hearings without violating due process. (ECF No. 5, at 9–10 (citing *Demore*, 538 U.S. at 528–31).)

Respondent's arguments are squarely refuted in *Portillo v. Hott*, 322 F. Supp. 3d 698 (E.D. Va. 2018), where the court ordered a bond hearing for a person who had been mandatorily detained pursuant to § 1226(c) for fourteen months. There, the Court reconciled the tension between *Zadvydas* and *Demore*. The Court explained that in *Zadvydas*, the Supreme Court concluded that for detainees mandatorily held pursuant to § 1231 after the issuance of a final order of removal: "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." 322 F. Supp. 3d at 704 (quoting *Zadvydas*, 533 U.S. at 699). In contrast, the *Portillo* Court explained that based in part on inaccurate data presented in *Demore*, the Supreme Court held that mandatory detention pursuant to § 1226(c) without a bond hearing did not violate due process. 538 U.S. at 514, 531. As explained in *Portillo*, in reaching that holding, the *Demore* Court distinguished *Zadvydas*:

> In *Demore*, the Court distinguished the *Zadvydas* holding in two respects. First, it observed that unlike the detention at issue in *Zadvydas*, detaining aliens under § 1226(c) during the pendency of removal proceedings "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 527–28 [ ]. Second it explained that *Zadvydas* was concerned with indefinite and potentially permanent detention, but that detention under § 1226(c) was significantly shorter. In particular, the Court observed that § 1226(c) detention has a "definite termination point"—the end of removal proceedings—and that statistics show that the average detention time under § 1226(c) is only approximately 47 days when the alien does not appeal and five months when the alien does appeal. *Id.* at 529–30 [ ].

322 F. Supp. 3d at 704–05. However, the Court noted:

> As this Court has previously observed, the data relied upon in *Demore* was inaccurate because the government provided incorrect information about the average time to completion in cases where an alien did not appeal and about the average time for appeal. *Haughton v. Crawford*, 2016 WL 5899285, at *8 (E.D. Va. Oct. 7, 2016). The government clarified in August 2016 that the total average time to completion in cases where the alien appealed was 382 days (approximately thirteen months, rather than five months) in 2001. In addition, it is important to observe that these statistics do not encompass the specific withholding-only proceedings at issue in this habeas petition, which have already exceeded fourteen months and are estimated conservatively to last at least another six months.

*Id.* at 705 n.5. With the knowledge that *Demore* was decided in part on admittedly inaccurate data, it is untenable to discern a bright-line rule from *Demore*'s holding as Respondent asserts.

Instead, the *Portillo* Court determined that "understanding *Demore* as applying the balancing test articulated in *Zadvydas* rather than as establishing a bright-line rule justifying detention under § 1226(c), regardless of the length or circumstances, is consistent with how the Due Process Clause has traditionally been understood." 322 F. Supp. 3d at 705–06 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976) and other cases). The Court in *Portillo* described the Supreme Court's balancing of interests in *Demore*:

> In *Demore*, as the Court made clear, the "special justification" that outweighed the liberty interest at stake was the interest in ensuring that the alien would be successfully removed if a final order of removal were eventually entered. In addition, the Court believed that the liberty interest at stake in *Demore* was substantially curtailed because the proceedings were typically relatively short: approximately a month in the vast majority of cases, and approximately five months if the alien chose to appeal. It appears as if the [Supreme] Court's weighing of these two interests against each other is what resulted in the ultimate holding that [the detainee there] was not constitutionally entitled to a bond hearing.

322 F. Supp. 3d at 705.

This Court agrees with the reasoning in *Portillo*. "Identifying the specific dictates of due process" is a matter of balancing interests. *See Mathews*, 424 U.S. at 334–35[4] (citation omitted). Respondent's assertion that "the Due Process Clause does not place an outer temporal limit on an alien's mandatory detention (pursuant to 8 U.S.C. §§ 1225(b) or 1226(c)) without a bond hearing" (ECF No. 5, at 7) is inapposite because the process due is determined by balancing the specific interests presented in a case rather than by bright-line rules or express limits. *See Portillo*, 322 F. Supp. 3d at 705–06. The same is true of Respondent's argument that the Immigration and Nationality Act provides for the process due to Petitioner, as well as Respondent's argument that *Demore* is dispositive regarding the due process for legal permanent residents.

The fallacy in attempting to discern a bright-line rule in *Demore* is plain. One of the two bases given by the Supreme Court in *Demore* for distinguishing *Zadvydas* was that the detention in *Demore* was "of a much shorter duration." 538 U.S. at 528. The Court stated that "in 85% of cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals . . . , appeal takes an average of four months." *Id.* at 529 (citation

---

[4] *Mathews* explained:

> More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 334–35 (citation omitted).

omitted). In explaining that the detention at issue in *Demore* was within range of those short averages, the Supreme Court stated that "[Kim] was detained for somewhat longer than the average—spending six months in [immigration] custody prior to the District Court's order granting habeas relief, but [Kim] himself had requested a continuance of his removal hearing." *Id.* at 530–31. In the instant case, however, Petitioner's detention of almost nineteen months is far beyond the short detention averages cited in the *Demore* decision and not "of a much shorter duration" than Zadvydas' fourteen-month detention. *See Demore*, 538 U.S. at 528.

Neither does the "definite termination point" of § 1226(c) detention categorically justify detention without a bond hearing. As explained in *Portillo*, "the [Supreme] Court believed that the liberty interest at stake in *Demore* was substantially curtailed because the proceedings were typically relatively short." 322 F. Supp. 3d at 705. If, as here, the removal proceeding is not relatively short, it cannot be said that the liberty interest at stake is substantially curtailed by prolonged detention simply because the termination point is definite. At some point, the balance of an increasing liberty interest at stake must tip toward more process due.

Regarding § 1225(b)(2)(A), Respondent states that "Section 1225(b)(2) has yet to be addressed by the Supreme Court." (ECF No. 5, at 8.) Under the specific facts of this case, mandatory detention without a bond hearing, whether pursuant to § 1225(b)(2) or § 1226(c), operate against Petitioner in the same manner and therefore implicate due process considerations in the same manner. Therefore, the Court will consider the process due by balancing the relevant interests.

### C. Balancing the *Portillo* Factors

"To determine whether such prolonged detention without a detention hearing violates due process, most judges in this court apply a five-factor balancing test under *Portillo v. Hott*, 322 F.

Supp. 3d 698, 707 (E.D. Va. 2018)." *Sonko v. Bondi*, No. 2:24-cv-656, 2025 WL 1662749, at *2 (E.D. Va. June 12, 2025), *report and recommendation adopted* 2025 WL 1854729 (E.D. Va. July 2, 2025). "Courts in this district have consistently followed this balancing test in resolving claims brought by immigration detainees under § 1226(c)." *Id.* (citing *Abreu v. Crawford*, No. 1:24-cv-1782, 2025 WL 51475 (E.D. Va. Jan. 8, 2025); *Santos Garcia v. Garland*, No. 1:21-cv-742, 2022 WL 989019 (E.D. Va. Mar. 31, 2022); *Martinez v. Hott*, 527 F. Supp. 3d 824 (E.D. Va. 2021); *Deng v. Crawford*, No. 2:20-cv-199, 2020 WL 6387010 (E.D. Va. Sept. 30, 2020)).

In *Portillo*, the Court set forth a five-factor balancing test to determine whether detention during the pendency of removal proceedings was prolonged and a substantial burden on the petitioner's liberty interest. 322 F. Supp. 3d at 707. "This Court ha[d] previously 'surveyed the analysis employed in other circuits' and identified 'five factors that recur across these cases' that 'bear on the reasonableness of an alien's detention' without being afforded a bond hearing." *Id.* (quoting *Haughton*, 2016 WL 5899285, at *8).

> The five factors are: '(1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the likelihood that the government will secure a final removal order.'

*Id.* (citations omitted).

The *Portillo* Court explained that "the most important factor" of the test was the length of detention. *See id.* The Court concluded that fourteen months was prolonged and amounted to a substantial burden on the petitioner's liberty interest on due process grounds and ordered the Government to provide the petitioner with a bond hearing. *Id.* at 708. Courts in the Eastern District of Virginia have found periods of over one year to be too prolonged to detain an individual without providing for a bond hearing. *See Abreu*, 2025 WL 51475, at *5 (citing cases

and finding twenty-five months in immigration detention under § 1226(c) without a bond hearing to violate due process); *Mauricio-Vasquez v. Crawford*, No. 1:16-cv-01422 (AJT/TCB), 2017 WL 1476349, at *4–5 (E.D. Va. Apr. 24, 2017) (ordering bond hearing after fifteen months); *Haughton v. Crawford*, No. 1:16-cv-634 (LMB/IDD), 2016 WL 5899285, at *9 (E.D. Va. Oct. 7, 2016) (ordering bond hearing after twelve months). At this juncture, Petitioner has been detained since March 6, 2025, almost nineteen months. This factor weighs in Petitioner's favor.

The second factor considers whether the length of detention in ICE custody exceeds the length of time served for the underlying criminal conviction. *Portillo*, 322 F. Supp. 3d at 707. Respondent acknowledges that Petitioner's violation was a misdemeanor and that Petitioner's immigration detention exceeds Petitioner's criminal sentence (ECF No. 5, at 12), but there is no information on the record regarding the length of time served for Petitioner's possession conviction. This factor is neutral.

The third factor asks whether the parties or adjudicators have engaged in dilatory tactics in bad faith. *Portillo*, 322 F. Supp. 3d at 707. Respondent states that "Petitioner's detention is lengthened here by simple procedural postures common in all immigration proceedings." (ECF No. 5, at 12.) As Respondent points out, an order of removal was issued on August 22, 2025, and Petitioner's appeal of the denials of his applications for relief has been pending since September 2025. (ECF No. 5, at 12–13.) There is no indication of bad faith. This factor is neutral.

The fourth factor accounts for procedural or substantive legal errors responsible for significantly extending the detainee's detention. *Portillo*, 322 F. Supp. 3d at 707. There is no indication of legal errors. This factor is also neutral.

The fifth factor is the likelihood that an order of removal will become final. *Id.* Petitioner's order of removal is on appeal before the Board of Immigration Appeals and briefs were filed on June 25, 2026. EOIR, *Automated Case Information*, A-Number: 061-465-939, available at: https://acis.eoir.justice.gov/en/caseInformation (last visited Sep. 30, 2026). Petitioner's appeal is pending and the Court cannot speculate how the appeal will be decided. *See Sonko*, 2025 WL 1662749, at *5 (citation omitted). This factor is also neutral.

Four of the factors are neutral and the most important factor weighs in Petitioner's favor. Upon consideration of the *Portillo* factors, the Court concludes that Petitioner's detention of nineteen months amounts to a substantial burden on Petitioner's liberty interest in violation of due process.

In sum, having been admitted and developing ties to the United States as a long-time lawful permanent resident, and in the absence of evidence that his constitutional status was affected by his trip to Mexico, the Court concludes that Petitioner is entitled to due process under the Fifth Amendment. Mandatory detention notwithstanding, the specific dictates of due process are determined by a balancing of interests. Based on application of the *Portillo* balancing test, the Court concludes that Petitioner's detention without consideration of bond violates due process. Accordingly, the § 2241 Petition will be GRANTED.

## IV. Conclusion

For the reasons articulated above, the § 2241 Petition (ECF No. 1) will be GRANTED.

An appropriate Order shall issue.

/s/ MHL
M. Hannah Lauck
Chief United States District Judge

Date: 10/13/26
Richmond, Virginia